Milligan, J.,
delivered the opinion of the Court.
The plaintiffs in error were indicted in the Circuit Court of Sumner County, for robbing. They were tried by a jury of the county, found guilty, and sentenced to the penitentiary for the period of ten years. There were motions for a new trial, and in arrest of the judgment; which respectively, were overruled; and an appeal in error to this Court.
The facts are voluminous and somewhat conflicting, but in the view we have taken of the case, it will be necessary to notice only a few of them. The alleged robbery, as shown by the proof, was perpetrated in the night. A house of the prosecutor was entered while he and his family were asleep; and he was aroused by the presentation of a pistol at his head, and a demand for money. Alarmed and excited, he sprang from his bed, and he and his sister, Winnie Barnly, in whom, the property taken is laid in one count of the indictment, rushed out of a door and fled to a neighboring house. In their absence, and before their return, one of the .prosecutors’ daughters was compelled to go up stairs and bring down their father’s box, which was broken open in the presence of the remaining members of the family, and some money, articles of clothing, etc., taken away. -
Under this state of facts, the Court was requested *352 to instruct the jury, that “To constitute the offense of robbery, the goods or property must be taken from the person of the party named in the indictment, as the owner, or in his presence, and against his will. And if the jury believed, from the evidence, that the property alleged to have been taken belonged to Stephen Barnly, (the prosecutor,) or, Winnie Barnly, and they became frightened and ran off, nothing being taken from their persons, or in their presence — that it would not be robbery, but larceny, and they could not find the defendants guilty under the indictment.”
The Court refused to give the instructions asked for by the defendants’ counsel; but charged the jury in substance as follows:
“If you believe the defendants put Stephen Barnly in fear, and caused him to run off, and then took from him his money, or hat and other goods, which was iu his possession, this would be robbery. The same principle applies to Winnie Barnly’s property. So, if Stephen’s goods were left in possession of his wife, and the defendants put her in fear, or by violence took possession of the goods or money, left in her possession, this would be robbery.”
Two questions are presented on the charge for our determination:
1st. To constitute robbery, must the taking be from the person, or in the immediate presence of the person robbed?
2d. Can an indictment for robbery, in which the property taken is laid in the husband, be sustained by proof that the possession was in the wife, and the *353 property taken, from her, or in her presence, under fear and violence?
By our Statute robbery is defined to be: “The felonious talcing, from the person of another, goods or money of any value, by violence, or putting in fear.”
Robbery is but an aggravated larceny, and the one statutory definition, is, in substance, the same as at common law. The elements necessáry to make out this offense in the one case, are demanded in the other. The taking must be felonious and forcible, from the person of the party robbed, either active or constructive. It is actual, when, in fact, the taking is immediately from the person; and constructive, when in the possession of the party robbed, as if the robber having first assaulted the owner, takes away his horse standing near, or having put him in fear, drives away his cattle, or takes up his pelisse or cloak, which the owner, to save it from the robber, had thrown into the bush: 3 Greenleaf Ev., sec. 228; 4 Blackstone’s Com., 241; 1 Russell on Crime, 872; Hammon vs. The State, (manuscript.)
But the construction of taking, from the person, seems, by all the authorities, to extend no further than a taking in the presence and under the view of the party robbed. Chief Justice Russell, in his Treaties on Crimes, vol. 1, p. 871, says, while discussing this subject: “But it is clear that the property must be taken in the presence of the owner. And when it appeared, upon a special verdict, that some thieves gently struck the prosecutor’s hands, whereby some *354 money, which he had taken out to give change, fell to the ground, and that upon his offering to take it up the thieves threatened to knock his brains out; upon which he desisted from taking up the money, and the thieves then and there, immediately took it up, a great majority of the Judges held, that, even by this statement, it was not sufficiently expressed in the special verdict, that the thieves took up the money in the sight or presence of the owner, and that they could not intend it, though there seemed to be evidence enough to have warranted such a finding.” Asso, 1; Hale on Crim. Law, 833; Wharton’s Crim. Law, 540.
2. In answer to the second inquiry arising on the charge, as to the possession of the goods taken, in the brief, we think the law is well settled. The goods or money taken must be proven to be the property of the person named as the owner in the indictment: 3 Greenleaf's Ev., 234; Wharton’s Crim. Law, 540.
True, there are cases where there is only a special property in the person put in fear, and from whom the goods or money are taken, in which it has been held to be robbery. As if a servant, having collected money for his master, is robbed of it on his way home, it has been thought it should still be allowed the money of the servant until it has been delivered to the master; or otherwise, the servant could not be guilty of the crime of embezzlement. But that principle is not applicable to the case. Here the ownership, as well as the possessor of the property, was in the prosecutor, and the taking must have been from his person, or in his possession.
*355 Other objections are taken to the charge, which are, perhaps, equally fatal; but as the exceptions under consideration are conclusive of the case, we do not deem it necessary to examine others.
We make no comment on the facts, further than to say, they deserve the severest punishment of the guilty parties; and to the end that another investigation, under a proper indictinent, or proper instructions to the jury, may be had, the judgment must be reversed, a new trial awarded, and the case remanded.